**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **RACHEL M. CHANEY, *et al.*,** Plaintiffs, | * | |
| v. | * | **Civil Case No.: SAG-24-02975** |
| **PERDUE FARMS INC., *et al.*,** Defendants. | * | |

* * * * * * * * * *

**MEMORANDUM OPINION**

Five individual plaintiffs, on behalf of a putative class, filed this lawsuit against Perdue Farms Inc., FPP Business Services Inc. d/b/a Perdue Farms Inc., Perdue Agribusiness LLC, Perdue Agribusiness Incorporated d/b/a Perdue Agribusiness LLC, Perdue Agribusiness Grain LLC d/b/a Perdue Agribusiness LLC, Perdue Foods LLC, and Perdue Foods Incorporated d/b/a Perdue Foods LLC (collectively "Perdue"), alleging that Perdue disseminated hazardous chemicals into the environment, causing harm to Plaintiffs and the putative class. ECF 1. On August 12, 2025, this Court issued a memorandum opinion and order (1) granting in part and denying in part Perdue's motion to dismiss Plaintiffs' Complaint and (2) denying Perdue's motion to stay the case. ECF 44, 45. Since then, the Parties[1] proceeded with some discovery and pursued a voluntary mediation that was ultimately cancelled.

[1] On October 6, 2026, Plaintiffs filed an Amended Complaint that added several new defendants to this case. *See* ECF 108. The Amended Complaint also replaced four of the original named plaintiffs—Doug C. Davis, Julie M. Davis, Gary W. Doss, and Rebecca R. Doss—with new ones—Carrie Lewis, Steven Lewis, Lisa King, and Clark Blackburn. For clarity and convenience, this Court's references to the "Parties" in this Memorandum Opinion refers only to the original parties to the case, Plaintiffs and Perdue.

Pending before this Court now is Plaintiffs' motion seeking an order from this Court to (1) impose sanctions on Perdue to compensate Plaintiffs for the fees and expenses they incurred preparing for the cancelled mediation, (2) compel Perdue to complete document production responsive to Plaintiffs' October 10, 2025 document production request, and (3) revise the Scheduling Order governing the remainder of the litigation.[2] ECF 91. Perdue has opposed the motion, ECF 93, and Plaintiffs filed a reply, ECF 100. This Court has reviewed the filings and determined that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, Plaintiffs' motion will be DENIED.

## I. BACKGROUND

Plaintiffs filed their original Complaint against Perdue on October 11, 2024. ECF 1. After several of Plaintiffs' claims survived a motion to dismiss, the case proceeded to discovery. On September 18, 2025, this Court granted the Parties' joint motion to set a case schedule with the following deadlines: substantial completion of document production by March 6, 2026; joinder of additional parties and amendment of pleadings by May 1, 2026; and substantial completion of fact discovery by June 5, 2026. ECF 53. At the Parties' request, on March 19, 2026, this Court stayed all deadlines for 45 days so the Parties could confer with a mediator and determine if mediation was appropriate. ECF 61. In the following month, the Parties retained the Honorable William G. Connelly (Ret.) as a mediator and shared pre-mediation statements. ECF 93-2 ¶ 8.

On May 5, 2026, this Court granted a joint request by the Parties to extend the stay until August 3, 2026 to allow the parties to focus on the then-upcoming mediation. ECF 62, ECF 63. The Parties agreed that the stay would not prohibit either party from seeking third-party discovery,

[2] Plaintiffs' motion also sought an order from this Court to terminate the stay entered pursuant to ECF 61 and 63. This Court lifted that stay on October 6, 2026, ECF 106, so the request is moot.

ECF 62, and during the stay, Plaintiffs noticed eleven third-party subpoenas. ECF 93-2 ¶ 33. Three days after this Court extended the mediation-related stay, Perdue filed two motions, seeking leave to file third-party complaints against Johnson Controls International PLC, Tyco Fire Products LP, Johnson Controls, Inc., Johnson Controls Fire Protection LP, and Chemguard, Inc. (collectively "Johnson Controls"), ECF 64-1 ¶¶ 25–29, and 3M Company, ECF 71-1 ¶ 18.[3] In a meet-and-confer on May 11, 2026, Perdue's counsel allegedly represented to Plaintiffs that, despite the potential addition of new third-party defendants to the case, "mediation remained viable, would still be beneficial and productive, and would proceed as scheduled." ECF 91-1 at 9.

On May 14, 2026, the Parties scheduled a multi-day mediation with Judge Connelly for July 27 through July 29, 2026. ECF 93-2 ¶ 27. In his initial instructions to the Parties, Judge Connelly provided that each side should submit confidential mediation statements simultaneously, one calendar week before the mediation, containing, *inter alia*, a summary of the evidence, a discussion of the applicable law, and each side's analysis of the case. ECF 94 at 2. In emails between counsel, Perdue's counsel repeatedly expressed a preference that the Parties stick to Judge Connelly's proposed briefing schedule. *See* ECF 95 at 4, 6. However, Plaintiffs' counsel insisted on an alternative two-step process, whereby Plaintiffs would submit their mediation statement to

---

[3] On October 6, 2026, this Court granted Plaintiffs' motion for leave to file an Amended Complaint and Perdue's motions to file third-party complaints against Johnson Controls and 3M Company. ECF 107. Notably, Plaintiffs' Amended Complaint brings claims against Johnson Controls and 3M Company for the first time, effectively adding those parties as defendants to the case. ECF 108. Accordingly, this Court will construe Perdue's third-party complaints against Johnson Controls and 3M as crossclaims. *See Burgess v. M/V Tamano*, 373 F. Supp. 839, 841 (D. Maine 1974) (construing a defendant's third-party complaints as crossclaims after plaintiffs amended their complaint to add those same third-party defendants to the case); *Stillwell v. U.S.*, No. 94-cv-831, 1996 WL 756515, at *1 n.1 (S.D. Ill. Oct. 3, 1996) (construing defendant's third-party complaints as crossclaims after plaintiff filed her own crossclaims against the third-party defendants, "effectively making them defendants to the original action.").

Perdue on June 29, 2026, Perdue would respond with its own mediation statement on July 13, 2026, and each side would then have an opportunity to respond. *Id.* at 2–4. Plaintiffs' counsel stated that its two-step schedule would "give both sides more time to prepare, see some responses to one another's positions, and hopefully make the mediation more efficient[.]" *Id.* at 5. On June 9, 2026, the Parties agreed to Plaintiffs' proposed schedule for filing mediation statements. *Id.* at 2.

In accordance with the agreed-upon schedule, Plaintiffs provided their mediation statement to Perdue on June 29, 2026. ECF 93-2 ¶¶ 23–24. However, before its own mediation statement was due, Perdue informed Judge Connelly on July 10, 2026, that it had decided to cancel the mediation after it reviewed Plaintiffs' mediation statement and determined that the Parties were too far apart for productive mediation. ECF 97 at 2. Perdue informed Plaintiffs of their intent to cancel the mediation the next day. *Id.* On July 28, 2026, Plaintiffs filed the presently pending motion, ECF 91.

## II. LEGAL ANALYSIS

### A. Sanctions

"Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (citation and internal quotation marks omitted); *see Life Techs. Corp. v. Govindaraj*, 931 F.3d 259, 267 (4th Cir. 2019) (explaining that district courts "have the inherent power to order sanctions to preserve the integrity of the judicial process and to punish bad-faith conduct intended to delay or disrupt the course of litigation or to impede enforcement of a court order") (internal quotation marks omitted). One of

the sanctions available to a district court is an award of attorney's fees "instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." *Goodyear*, 581 U.S. at 107. The Supreme Court has noted both that this inherent power to sanction by an award of fees "must be exercised with restraint and discretion," *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980), and that the set of circumstances justifying an award of attorneys' fees under a federal court's inherent power as a sanction for bad faith is narrow. *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013). "Sanctions may be awarded only in the face of misconduct of some sort." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 146 (4th Cir. 2020). While the Fourth Circuit has never provided clear guidance on the burden of proof in sanctions proceedings, many courts require "clear and convincing evidence" of misconduct to support an exercise of the Court's inherent sanctions power. *See United States v. Allergan, Inc.*, No. 17-cv-00668, 2024 WL 2882125, at *6–7 (D. Md. May 30, 2024) (discussing sanctions caselaw).

The crux of the present dispute is whether Perdue's conduct surrounding the failed voluntary mediation can fairly be deemed the sort of intentional abuse of the judicial process contemplated by *Goodyear* and related case law discussing sanctions for bad faith. In the absence of Perdue performing any specific acts of sanctionable misconduct, such as "fraud, deceit, misrepresentation, [or] harassment" *see Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 281 (4th Cir. 2022), Plaintiffs point broadly at Perdue's "course of conduct" leading up to the mediation to argue that Perdue "never intended to mediate this case in good faith," ECF 91-1 at 14. To support an inference of bad faith, Plaintiffs highlight the following facts: (1) both parties agreed to a stay of deadlines for 45 days, and then extended the stay for three more months for the stated purpose of pursuing mediation, (2) three days after the mediation-related stay was extended, Perdue filed motions for leave to file third-party complaints against Johnson Controls and 3M Company, (3)

despite Plaintiffs' reservations that adding new third-party defendants could compromise the mediation's effectiveness, Perdue reaffirmed on several occasions that the mediation could still proceed, and (4) Perdue cancelled the mediation after receiving Plaintiffs' final mediation statement, but before it was required to submit a corresponding mediation statement. ECF 91 at 14–17. Taken together, Plaintiffs argue this course of conduct was intended to "induce[]" Plaintiffs to prepare for a mediation that Perdue had no good-faith intention of intending. *Id.* at 17. As a result, Plaintiffs incurred "substantial attorneys' fees and expert expenses," while Perdue reaped "strategic litigation advantages," including additional time to implead third parties and one-sided access to Plaintiffs' mediation statement. *Id.* at 16–17.

In this Court's view, Perdue's course of conduct does not come close to meeting the high bar for exercising the Court's inherent sanctions authority. To start, Plaintiffs do not and cannot point to any order of this Court or Judge Connelly that Perdue violated. Instead, Perdue's motions for leave to file third-party complaints and its decision to withdraw from voluntary mediation appear to have been permitted by the schedules that Plaintiffs expressly agreed to.

Turning first to Perdue's motions for leave to file third-party complaints on May 8, 2026, this Court notes that the Parties' joint motion to extend the mediation-related stay expressly requested in bold and underlined text that "**<u>all deadlines in this case</u>**" be stayed until August 3, 2026, ECF 62 (emphasis in original), clearly encompassing the then-applicable May 1, 2026 deadline for "joinder of additional parties," ECF 53. Given that both parties clearly consented to extending the deadline to join new parties, this Court finds it difficult to now infer deceit or bad

faith from Perdue's attempt to join parties within the agreed-upon timeline.[4] This is particularly so when Plaintiffs filed an Amended Complaint adding those exact defendants to this case months later on October 6, 2026. *See* ECF 108. Furthermore, Plaintiffs themselves benefited from the mediation-related stay, receiving document production from Perdue and serving nearly a dozen third-party subpoenas while the case was paused. ECF 93-2 ¶¶ 31–33.

This Court also finds little reason to infer bad faith or misconduct from Perdue's decision to withdraw from the mediation in mid-July. To start, it is worth emphasizing that voluntary mediation is just that—*voluntary*. It is a risk inherent to private mediation that a party may withdraw after significant pre-mediation work has been done but before resolution is found. Plaintiffs' lament that they have lost some amount of time and money preparing for the unsuccessful mediation does not change that fact.[5] Nor was the risk of losing time and money

---

[4] This Court also notes that Perdue filed its motion for leave to file third-party complaints against Johnson Controls and 3M Company on May 8, 2026, only seven days after the then-applicable May 1, 2026 deadline to join parties. ECF 64, 71. It is thus difficult to accept Plaintiffs' contention that Perdue gained any meaningful litigation advantage by seeking to join the those parties after the mediation-related stay was extended as opposed to before.

[5] Plaintiffs' sanctions motion does not offer an accounting of the 1,400 hours of attorney and paralegal time and $400,000 in fees allegedly spent preparing for the voluntary mediation. Instead, Plaintiffs offer to "provide declarations, expert and consultant invoices, and other documentation substantiating these fees, costs, expenses, and time expenditures to the Court upon request." ECF 91-1 at 16 n.6. Although this Court is not awarding fees today, Plaintiffs are reminded that the movant bears the burden of justifying its fee request with an accounting of its time spent. *See Guillen v. Armour Home Improvement, Inc.*, No. DLB-19-2317, 2024 WL 1346838, at *21 (D. Md. March 29, 2024) ("The burden of identifying which hours are recoverable rests on the party moving for fees, not the district court."); *cf. Fair Hous. Council of Greater Wash. v. Landow*, 999 F.2d 92, 97–99 (4th Cir. 1993) (affirming a district court's denial of a fee request in its entirety

unique to Plaintiffs; as Perdue avers, it incurred its own expenses of over $130,000 preparing for the failed mediation, billing time on mediation prep up until July 7, 2026—three days before it withdrew. *Id.* ¶¶ 34–38.

Plaintiffs persevere and argue that, absent an inference of bad faith, Perdue's reaffirmations in May and June that mediation could still be "beneficial and productive" cannot logically be squared with its decision to withdraw from the mediation on July 10, 2026. ECF 91-1 at 9. However, Plaintiffs' cynical interpretation of this timeline ignores a much more charitable reading of Perdue's actions: namely, that Perdue (in good faith) believed throughout May and June that mediation could resolve some or all of Plaintiffs' claims, but determined that the Parties were too far apart upon reviewing Plaintiffs' final mediation statement in July. *See* ECF 97 (Perdue's email to Judge Connelly explaining that they could not "envision any possibility of progress [or] resolution" after considering Plaintiffs' mediation statement).

That Perdue got one-sided access to Plaintiffs' mediation statement does little to support an inference that Perdue pursued mediation in bad faith. To start, Plaintiffs' strategic choices, not Perdue's, created the very conditions that allowed Plaintiffs to turn over its mediation statement without first receiving Perdue's. As Perdue's filings make clear, ECF 94, ECF 95, under Judge Connelly's proposed mediation process, both sides would have turned mediation statements over to one another simultaneously, one calendar week before the mediation. *See* ECF 94 at 2. However,

---

that offered inadequate time records to justify its fee request). Furthermore, while, in the absence of a full accounting, this Court cannot estimate with any certainty how much of Plaintiffs' time and money may have been lost preparing for the ultimately unsuccessful mediation, it seems likely that a meaningful fraction of the $400,000 of legal work and the $270,000 of expert and consultant fees that Plaintiffs claim to have incurred reflects useful work product that Plaintiffs may use as they continue prosecuting the merits of their case. ECF 91-1 at 10.

Plaintiffs insisted that the Parties submit their mediation statements in sequence with Plaintiffs going first, despite Perdue's suggestion that the parties stick to the simultaneous filing procedure. *See* ECF 95 at 4–6. Plaintiffs' suggestion that Perdue pursued mediation in bad faith to gain one-sided access to Plaintiffs' mediation statement is incompatible with that series of events.

Moreover, Plaintiffs' sanctions motion undercuts its own argument that there was a "strategic litigation advantage[]" to be gained from receiving its final mediation statement. ECF 91-1 at 14. By Plaintiffs' own admittance, "[n]one of the information contained in Plaintiffs' mediation statement was materially different from the information contained in Plaintiffs' pre-mediation vetting statement," meaning that Perdue likely gained no material advantage from receiving Plaintiffs' mediation statement. *Id.* at 4.

On this record, then, this Court cannot find, by clear and convincing evidence, that Perdue pursued mediation in bad faith as required to exercise this Court's inherent sanctions authority.

### B. Order to Compel Discovery and Revise the Scheduling Order

Plaintiffs' requests for an order compelling document production and revising the scheduling order will also be denied. Because Plaintiffs' Amended Complaint added new defendants and claims to the case, a new schedule will be set to govern the remainder of the litigation.

## III. CONCLUSION

For the reasons stated above, Plaintiffs' motion, ECF 91, is DENIED. A separate Order follows.

Dated: October 7, 2026

/s/
Stephanie A. Gallagher
United States District Judge